IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICKIE C.,[1]

    Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 6:18-cv-0102-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Vickie C. brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

    On August 20, 2014, Plaintiff filed an application for DIB, alleging disability as of April 29, 2014. After a hearing, the administrative law judge ("ALJ") determined Plaintiff was not disabled under the Act from April 29, 2014, through May 8, 2017, the date of the ALJ's decision. Tr. 13-28.[2] Because the Commissioner's decision is not based on proper legal standards and not supported by substantial evidence, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion uses only the first name and initial of the last name of the non-governmental party in this case.

[2] "Tr." refers to the Transcript of the Social Security Administrative Record provided by the Commissioner (ECF No. 11).

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, I review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. *Id.* At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in

significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

Born in 1965, Plaintiff was 48 years old on the alleged disability onset date and 51 years old on the date of her hearing. Tr. 168. She earned a high school equivalence degree and attended college for two years. Tr. 44. Plaintiff worked as a nursing assistant and hospital admitting clerk. Tr. 57-58. She alleged disability due to limited range of motion, weakness, pain, and neuropathy in the right hand and arm; back pain with muscle spasms; depression; hypertension; insomnia; diabetes; and "stomach problems." Tr. 188.

The ALJ determined Plaintiff had the following severe impairments: history of right elbow epicondylitis status post-surgery; right shoulder injury status post-surgeries; mild bilateral carpal tunnel syndrome ("CTS"), status post-release on the right; cervical degenerative disc disease; left elbow epicondylitis; and fibromyalgia. Tr. 15. The ALJ resolved that Plaintiff retained the RFC to perform light work, except Plaintiff could only occasionally crouch, stoop, crawl, and reach overhead with the right extremity; never kneel or climb ladders, ropes, and scaffolding; could not tolerate hazards such as machinery and unprotected heights; and required the freedom to change position every thirty minutes while remaining on task. Tr. 19-20. The ALJ determined Plaintiff could perform her past work as a hospital admitting clerk, as well as other jobs in the national economy, such as photocopy machine operator, office helper, and electronics assembler. Tr. 26-28. Therefore, the ALJ concluded Plaintiff was not disabled under the Act.

Plaintiff argues the ALJ erred by rejecting multiple medical opinions, failing to properly consider Plaintiff's headaches and mental health impairments, and finding Plaintiff capable of performing her past relevant work as a hospital admitting clerk. I address each argument in turn.

3 – OPINION AND ORDER

I.   **Medical Opinion Evidence**

Plaintiff first argues the ALJ erred by rejecting functional limitations assessed by consultative reviewing physicians, Drs. Pritchard and Berner. Consultative physicians are "experts in the Social Security disability programs," and an ALJ is required to "consider their findings of fact about the nature and severity of an individual's impairment(s)." SSR 96-6p, *available at* 1996 WL 374180, at *2. Although an ALJ is not bound by the findings made by consultative physicians, an ALJ "may not ignore these opinions and must explain the weight given to the opinions." *Id.* Thus, an ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted).

Here, the ALJ gave only partial weight to the consultative physicians' opinions. Specifically, the ALJ rejected the doctors' assessment that, due to Plaintiff's CTS and right-shoulder rotator cuff tear, Plaintiff could lift a maximum of ten pounds and could only occasionally push, pull, use hand controls, or reach in front with the right arm. Tr. 79-80, 99-101. The ALJ found those limitations inconsistent with evidence demonstrating Plaintiff's symptoms improved with treatment, as well as Plaintiff's ability to drive a car, mow the lawn, and serve as a caretaker for her ailing parents. The ALJ gave sufficiently specific reasons that were supported by substantial evidence to reject the consultative doctors' assessed limitations. For example, the ALJ reasonably found Plaintiff's lack of complaints concerning CTS in her right hand after undergoing CTS-release surgery indicated the surgery was successful. Tr. 21-22. Moreover, the doctors' assessed limitations concerning Plaintiff's right arm is inconsistent with Plaintiff's ability to operate a lawn mower, tr. 767, which requires considerable pushing, pulling, and

reaching to the front. Accordingly, the ALJ did not err in giving partial weight to the consultative physicians' opinions.

Next, Plaintiff argues the ALJ erred by rejecting portions of examining physician, Dr. Weller's opinion. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If, however, the opinion is contradicted by that of another doctor, then the ALJ need only provide "specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ may satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). The ALJ must, in other words, "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation and quotation marks omitted).

Dr. Weller preformed a physical examination of Plaintiff in April 2016. Tr. 734-38. The doctor opined, in relevant part, that Plaintiff could frequently drive, finger, handle, and operate foot controls; could lift a maximum of ten pounds with the right arm; and could not use her right arm at or above shoulder height. Tr. 737-38. The ALJ's rejection of Dr. Weller's assessed limitations was erroneous. Despite giving "significant weight" to most of Dr. Weller's opinion, the ALJ failed to address the doctor's assessment that Plaintiff could only lift ten pounds with her right arm and could only drive, finger, handle, and operate foot controls on a frequent basis. Thus, the ALJ's rejection of those limitations was not based on substantial evidence.

Further, the ALJ found limiting Plaintiff to occasional overhead reaching on the right was more appropriate because Dr. Weller's no-reaching assessment was inconsistent with her advice

that Plaintiff should exercise, Plaintiff's demonstration of mostly full strength in much of her right arm on examination, and Plaintiff's reported activities of caretaking and taking people to appointments. Tr. 24. The ALJ's reasons for rejecting Dr. Weller's no overhead reaching limitation were neither specific nor legitimate.[3] First, Dr. Weller's opinion that Plaintiff could benefit from a water exercise program, with nothing more, is not inconsistent with the doctor's assessment that Plaintiff could not perform work requiring overhead reaching. An individual can partake in a water exercise program that requires no overhead reaching. Moreover, Dr. Weller's encouragement does not equate to an assessment of Plaintiff's actual abilities, especially considering the fact that the doctor's specific no-reaching limitation was supported by objective findings. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (a claimant's participation in therapeutic exercises is not evidence that the claimant is able to perform or sustain such activity in a work setting).

Second, although an ALJ may reject an examining doctor's opinion when the doctor's examination results do not support the degree of restriction assessed, *see Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), Plaintiff's demonstration of strength in much of her right arm is not inconsistent with her inability to reach overhead. Notably, while Plaintiff demonstrated full-strength in her upper extremities, her right deltoid strength was diminished to 3-plus on a scale of 5. Tr. 736. More importantly, Plaintiff's limited range of motion in her right shoulder was entirely consistent with Dr. Weller's limitation to no overhead reaching. *Id.* (90 degrees of flexion and 70 degrees of abduction in the right shoulder, as opposed to 150 degrees flexion and

---

[3] Because Dr. Weller's opinion that Plaintiff could not reach overhead with the right arm was contradicted by the reviewing physicians' opinions that Plaintiff could occasionally reach overhead on the right, the ALJ needed to provide only specific and legitimate reasons to reject Dr. Weller's assessed limitation. *Bayliss*, 427 F.3d at 1216.

140 degrees abduction on the left). Indeed, objective testing throughout the record consistently demonstrates that Plaintiff could not reach overhead with her right arm. *See*, *e.g.*, Tr. 555 (105 degrees flexion and 80 degrees abduction in supine position), 557 (80 degrees active flexion), 657-58 (105 degrees active flexion and 80 degrees abduction, consistent with discharge summary noting Plaintiff was "not able to do any activity overhead as of yet"), 665 (reduced muscle strength and limited right shoulder abduction and flexion), 720 (105 degrees active flexion). An ALJ's "[s]heer disbelief is no substitute for substantial evidence." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

Finally, there is no indication that Plaintiff's caretaking activities required her to reach overhead with her right arm. *See* Tr. 721, 818. And, while driving a car certainly involves reaching forward, it does not necessarily require the ability to reach above shoulder height. Accordingly, the ALJ erred in rejecting Dr. Weller's opinion that Plaintiff could not reach overhead with her right arm.

Plaintiff next contends the ALJ erred by giving little weight to a determination made by her private insurance carrier denying her claim for long-term disability benefits. Plaintiff argues that had the ALJ properly credited the private claim denial, Plaintiff would have been limited to sedentary work. The parties also disagree on whether an ALJ must even consider a disability determination made by a private insurance examiner who has no medical credentials and never met the claimant in person. *See* SSR 06-03p, *available at* 2006 WL 2329939, at *6-7; 20 C.F.R. § 404.1527. I need not resolve this dispute. Even assuming the ALJ was required to consider the claim examiner's decision and erred by failing to provide sufficient reasons for rejecting the examiner's findings, the error would have been harmless.

To be eligible for long-term benefits through her private insurer, Plaintiff had to be "unable to perform each of the Main Duties of any occupation which . . . her training, education or experience will reasonably allow." Tr. 287. Although that requirement appears somewhat analogous to the findings an ALJ makes at steps four and five of the sequential analysis, any similarity is superficial at best. Unlike the RFC determination that an ALJ is required to make before reaching steps four and five, *i.e.*, the *most* an individual can do despite his or her impairments, the insurance claim examiner needed only find Plaintiff could perform the demands of practically any occupation to determine she did not qualify for long-term benefits. *See* 20 C.F.R. § 404.1545. Indeed, the records reviewed by the claim examiner included the assessments of Dr. Weller, who limited Plaintiff to light work, and Dr. Rask, who limited Plaintiff to sedentary work. Tr. 288. As such, the claims examiner had no reason to determine the full-extent of Plaintiff's functional abilities. Even if the most limiting medical opinion considered by the claim examiner was fully credited, Plaintiff was still able to perform sedentary work and was, therefore, ineligible for long-term disability benefits. Read in context, the denial letter supports the proposition that Plaintiff could perform sedentary work; however, it does not support Plaintiff's argument that she could only perform sedentary work. *See* Tr. 288 ("The documentation provided *suggests* you are not limited from working in a sedentary work capacity.") (emphasis added). Because any error would have been harmless, the ALJ's handling of Plaintiff's long-term benefits denial cannot constitute reversible error.

II. **Plaintiff's Headaches and Psychological Impairments**

Plaintiff asserts the ALJ erred by finding her headaches not medically determinable and her depression non-severe.

The ALJ did not err in finding Plaintiff's occasional reporting of headaches was insufficient to establish headaches as a medically determinable impairment. A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," not just a claimant's reported symptoms. 20 C.F.R. § 404.1521. The only evidence supporting Plaintiff's allegations of headaches were her occasional reports of symptoms to her doctors, which, standing alone, are insufficient to establish a medically determinable impairment. Moreover, as the ALJ noted, Plaintiff denied headaches at many exams, which was inconsistent with her allegations of daily headaches. Tr. 17, *see, e.g.*, Tr. 470, 586, 592. 598, 601, 604, 611, 891. Accordingly, the ALJ's finding that headaches were not a medically determinable impairment was rational and supported by substantial evidence.

The ALJ did, however, err in his consideration of Plaintiff's mental health impairments. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 147, 153-54 (1987). The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. § 404.1512. An impairment or combination of impairments is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The ALJ is required to consider the combined effect of all of the claimant's impairments in determining the RFC. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). If the ALJ determines that a claimant has a severe impairment at step two in addition to a non-severe impairment, the sequential

9 – OPINION AND ORDER

analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. SSR 96-8p, *available at* 1996 WL 374184.

The ALJ found Plaintiff's depression and posttraumatic stress disorder ("PTSD") were medically determinable, but non-severe impairments. Tr. 17-19. Plaintiff asserts that her subjective symptom allegations and her niece's third-party statement establish her psychological impairments were severe. The ALJ, however, found Plaintiff's symptom testimony was not reliable and the statement from Plaintiff's niece deserved little weight. Tr. 21-26. Plaintiff did not put forward any analysis or argument challenging either of those findings. *See Western Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012) (noting that courts "will not do an appellant's work for it, either by manufacturing its legal arguments, or by combing the record on its behalf for factual support"); *Carmickle v. Astrue*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("[I]ssues not argued with specificity in briefing will not be addressed."). While I find the ALJ's reasons for finding Plaintiff's psychological impairments non-severe were supported by substantial evidence, the ALJ failed to properly consider Plaintiff's depression and PTSD in determining the RFC. *See* SSR 96-8p, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). The ALJ limited consideration of Plaintiff's depression and PTSD to steps two and three of the sequential analysis. In so doing, the ALJ gave significant weight to the consultative reviewing psychologists' opinions that Plaintiff's psychological impairments were non-severe because they caused no more than minimal limitation in Plaintiff's ability to perform basic work activities. Tr. 18. The ALJ found that based on the overall record, Plaintiff's medications, the combination of her impairments, and her symptom testimony, Plaintiff was only mildly limited in her ability to concentrate, persist, or maintain pace. Tr. 18-19.

Next, the ALJ conducted the requisite "special technique" by rating the degree of limitation caused by Plaintiff's depression and PTSD in the "four broad functional areas." 20 C.F.R. § 404.1520a. The ratings assigned by the ALJ were identical to his findings made in analyzing the consultative opinion evidence, *i.e.*, Plaintiff was mildly limited in concentration, persistence, or pace, but otherwise had no other limitations. Tr. 18 This "special technique" assessment and subsequent findings were intended only for the limited purpose of rating the severity of Plaintiff's psychological impairments at steps two and three. Tr. 19; *see also* SSR 96-8p. In assessing Plaintiff's RFC, the ALJ merely referred to his previous non-severity finding, but he did not otherwise discuss Plaintiff's depression and PTSD. Tr. 21.

The ALJ's decision presents two possibilities; neither bodes well for the Commissioner. The first possibility is that the ALJ's finding regarding concentration, persistence, or pace was not an RFC assessment; rather it was—as disclaimed—only intended for the limited purpose of rating the severity of Plaintiff's impairments at steps two and three. If that was the ALJ's intention, however, the ALJ's reference to his previous non-severity analysis was of no import, and the ALJ erred by failing to consider the limitations caused by Plaintiff's mental health impairments in the RFC assessment. The second possibility is that the ALJ's reference to the mild mental limitations was in consideration of Plaintiff's psychological impairments for purposes of the RFC. Under this scenario, however, the ALJ failed to explain why there was no RFC restriction addressing his finding that Plaintiff was mildly limited in concentration, persistence, or pace. In either case, the ALJ erred.

The Commissioner argues any error was harmless because even if the ALJ included a limitation to unskilled work in the RFC, which Plaintiff asserts would have been the necessary limitation, the occupations the vocational expert ("VE") testified Plaintiff was capable of

performing were all unskilled positions. Tr. 27. Had the ALJ not committed harmful error in his rejection of Dr. Weller's opinion, the Commissioner's argument would have merit. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (An error is harmless when it is inconsequential to the ultimate non-disability determination). When, as is the case here, the hypothetical question presented to the VE does not include all of a claimant's limitations, the VE's testimony "has no evidentiary value." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citation omitted). Accordingly, the occupations the ALJ found Plaintiff could adjust to at step five necessarily fail for want of evidentiary support and cannot serve as a basis for finding the ALJ's failure to properly consider Plaintiff's psychological impairments harmless.

### III. Past Relevant Work

Plaintiff argues the ALJ erroneously found she had past relevant work as a hospital admitting clerk. An ALJ errs by classifying a claimant's past relevant work based on "the least demanding aspect of the claimant's past job," unless "(1) the 'least demanding function' is a task that the claimant actually performed most of the time; and (2) the [Dictionary of Occupational Titles] DOT defines the claimant's past job as requiring only that least demanding function." *Stacy v. Colvin*, 825 F.3d 563, 570 (9th Cir. 2016) (citation omitted).

The first prong of *Stacy* presents a close call and turns on whether Plaintiff worked as an admitting clerk "most of the time." *Id.* Fundamentally, the scope of the relevant time-frame must be determined before any decision can be made as to what Plaintiff did during most of it. Plaintiff testified that she worked in a "secretarial position" for eighteen months of the fourteen years she worked at the Good Samaritan Hospital. Tr. 45-48. Thus, if the relevant scope of the inquiry is Plaintiff's entire tenure at the hospital, it could hardly be considered that she worked as an admitting clerk most of that time.

However, Plaintiff further testified that she took the secretarial position in order to "to take a little break from the [intensive care unit] floor." Tr. 48. Further, while she was on her feet "almost all of [the day]" as a nursing assistant, she "was mostly sitting" in her clerical position. Tr. 46-47. Thus, contrary to Plaintiff's assertion that her work at the hospital should have been labeled a composite job, Plaintiff's eighteen-month stint as an admitting clerk was distinct from her work as a nursing assistant. As such, I find on these facts that the scope of the inquiry should focus on what tasks Plaintiff "actually performed most of the time" she was working in the secretarial position. Consideration of Plaintiff's work tasks rather than where she happened to be employed or what license she held at the time is more in keeping with *Stacy*'s focus on the tasks required by the job.[4] Based on Plaintiff's description of her responsibilities in the secretarial position, especially when compared to her testimony concerning the more physically-demanding tasks she performed as a nursing assistant, I conclude Plaintiff spent most of her time doing the tasks required of an admitting clerk for the eighteen months she worked in that position.

To meet the second prong of *Stacy*, the DOT must define the hospital admitting clerk position as requiring no additional tasks beyond those described by Plaintiff. Per the DOT, a hospital admitting clerk: "Interviews incoming patient [and] enters information required for admission . . . . Escorts patient or arranges for escort to assigned room or ward. Enters patient admitting information into computer and routes printed copy to designated department." DOT 205.362-018, *available at* 1991 WL 671710. In describing her clerical job duties, Plaintiff testified she was responsible for "checking in patients for their short stay surgery and doing some preps and their paperwork and their chart." Tr. 47. Plaintiff was also occasionally required to

---

[4] The time necessary to learn the job of a hospital admitting clerk takes between three to six months, which additionally supports that Plaintiff's time actually spent performing clerical tasks should define the relevant time period. *See* DOT 205.362-018, *available at* 1991 WL 671710.

13 – OPINION AND ORDER

help patients with their luggage and belongings. Tr. 48. Because the DOT does not describe functions beyond those Plaintiff described at her hearing, the ALJ did not err in finding Plaintiff had past relevant work as a hospital admitting clerk.

## IV. Remand

Plaintiff does not request a remand for an immediate calculation and payment of benefits; therefore, I need not conduct a credit-as-true analysis. As discussed, the ALJ's reasons for rejecting portions of Dr. Weller's opinion were not supported by substantial evidence, and the ALJ failed to properly consider whether there were any RFC limitations imposed by Plaintiff's non-severe mental health impairments. Accordingly, I remand this matter for further administrative proceedings to: (1) reevaluate Dr. Weller's medical opinion; (2) properly consider any potential limitations caused by Plaintiff's non-severe impairments; and (3) conduct any additional necessary proceedings, including ordering a consultative physical examination to further develop the record regarding Plaintiff's limited range of motion in her upper right extremity, as well as taking new VE testimony.

## CONCLUSION

The ALJ's decision is not based on proper legal standards nor supported by substantial evidence. Therefore, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this <u>4th</u> day of March, 2019.

                                                                          s/Michael J. McShane
                                                                             Michael McShane
                                                                United States District Judge